AYRES, Judge.
This is an action under the Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq. The pleadings, complex in themselves, present an equally complex factual situation. Plaintiff sustained accidental injuries in three separate accidents in the course of his employment with two employers. In each of these accidents, he claimed to have sustained disabling injuries contributing to his total disability. Each accident was covered by a different insurer.
Plaintiff, whose occupation was that of an iron worker, was involved in two accidents while employed by Riggers & Erectors, Inc. The first accident occurred on March 20, 1968, at which time Tri-State Insurance Company was the employer’s compensation insurer, and the second accident occurred on June 7, 1968, when The Phoenix Insurance Company was the compensation insurer. Plaintiff also sustained accidental injuries in a third accident on September 17, 1970, while employed by Southland Fabricators and Erectors, insured by Westchester Fire Insurance Company.
Included in the pleadings are plaintiff’s original petition and three separate supplemental petitions; answers to these several petitions filed by Tri-State, named defendant in all petitions; by Phoenix, named defendant in the second and third amended petitions; third-party petitions filed by both defendants against each other and against Southland and its insurer, West-chester; as well as answers to these third-party petitions by all third-party defendants.
In the original and first supplemental petitions, petitioner sought recovery of only certain alleged medical expenses. These petitions alleged that accidental injuries were sustained on March 20, 1968; that Tri-State, as the insurer of his employer, though paying compensation benefits, had refused to pay the medical expenses incurred in his treatment by Dr.' Paul M. Campbell, an osteopath.
In the second supplemental petition, Phoenix was named as a codefendant with Tri-State. There it is alleged that plaintiff sustained for a second time accidental injuries on June 7, 1968, on which date Phoenix was the compensation insurer of his employer. Plaintiff alleged therein that subsequent to the first injury but prior to the second injury, he was, in fact, engaged in his chosen profession, but thereafter, because of the injuries sustained, he was not able to work. He accordingly asserted his entitlement to compensation as for total and permanent disability and sought recovery therefor, as well as reimbursement of medical expenses incurred in the treatment of his injuries, from both defendants, Tri-State and Phoenix.
In the third supplemental petition, filed on November 2, 1970, plaintiff alleged that he was involved in a third accident September 17, 1970, while working for South-land Fabricators. In neither of plaintiff’s four petitions did he make this employer or its insurer defendants. Nor did he seek to recover compensation from either. He prayed for judgment against Tri-State and Phoenix only, “as prayed for in his original petition,” which was, as noted, for the recovery of only certain medical expenditures.
Tri-State, in answer to the original and first supplemental petitions, admitted the continuing payment of weekly compensation and the furnishing of medical attention by two physicians, who remained available to plaintiff, but denied that the treatments allegedly rendered by Dr. Campbell were either reasonable or required for any condition resulting from the first alleged accident, and averred that the greater part of those treatments was rendered subsequent to the second accident.
Answers to the second and third supplemental petitions were filed by Tri-State and Phoenix. Tri-State filed its third-par *436 ty petition naming Phoenix, Southland Fabricators, and Westchester as third-party defendants. Tri-State sought contribution from Phoenix for all sums paid as compensation and medical expenses from and after June 7, 1968, as well as all such sums which Tri-State may be ordered to pay thereafter.
In connection with the above, it was contended that the continuing complaints of plaintiff after June 7, 1968, were caused, aggravated or contributed to by the accident of that date. Moreover, Tri-State contended that plaintiff had recovered from any disability attributable to the first and second accidents prior to the third accident, and that whatever disability plaintiff then complained of resulted solely from the third accident. Accordingly, Tri-State sought contribution from plaintiff’s last employer and its insurer for the amount of any judgment for workmen’s compensation benefits which might be rendered against it accruing after September 17, 1970.
Likewise, in answer to the third supplemental petition, Phoenix also instituted a third-party claim against Southland Fabricators and Westchester which appear, as already noted, only as third-party defendants under third-party petitions filed by the original defendants, Tri-State and Phoenix. In his third supplemental petition, plaintiff alleged, as aforesaid, the occurrence of a disabling accident on September 17, 1970, for which Westchester was making payment of workmen’s compensation benefits on an undisclosed pro rata basis. Therein followed plaintiff’s prayer for judgment against Tri-State and Phoenix in solido “as prayed for in his original petition.”
In the original petition, as already noted, plaintiff’s recovery was limited to medical expenses only, and plaintiff prayed accordingly. In none of his petitions did plaintiff pray for judgment for compensation benefits against either defendant.
On these pleadings, the case was tried. The court found that plaintiff sustained accidental injuries in the first and third accidents as enumerated above, and on account of which plaintiff was permanently and totally disabled within the purview of the workmen’s compensation statute. A finding was made that plaintiff received no injury to his back by virtue of the second accident. There was judgment accordingly in favor of plaintiff against Tri-State for the full sum and weekly compensation of $35.00 per week for the period of March 20, 1968, to September 17, 1970; at the rate of $35.00 per week and 50% of the weekly installments, or $17.50 per week, from September 17, 1970, for the period of plaintiff’s disability, not to exceed 400 weeks dating from March 20, 1968. Plaintiff was also awarded judgment for medical services rendered by Dr. Campbell in the sum of $1,000.00. The demands of plaintiff against Phoenix were rejected as were the third-party demands of Tri-State against Phoenix, Southland Fabricators, and Westchester, as were the demands of Phoenix in its third-party proceeding against Southland Fabricators and West-chester. From the judgment accordingly signed on September 8, 1971, plaintiff de-volutively and defendant Tri-State suspen-sively and devolutively appealed.
In view of the liberality accorded the construction and interpretation of pleadings under the Workmen’s Compensation Act and, further, in view of the provisions in LSA-C.C.P. Art. 2164, to the effect that appellate courts shall render any judgment which is just, legal, and proper upon the record on appeal, with complete freedom to do justice thereon irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below, we deem the insufficiency of plaintiff’s prayers in his several petitions, with respect to the recovery of workmen’s compensation, is now a matter of little or no consequence. The parties, through their counsel, treated the matters litigated as an action under the compensation statute and for the benefits provided thereunder. It was considered in like manner by the trial court and, except as attention was directed *437 thereto by counsel for Tri-State, was briefed, argued, and submitted by all counsel to this court. Moreover, the pleadings were enlarged to encompass demands for compensation.
The defendant Tri-State assigns as error the action of the trial court (1) in finding there was no evidence presented showing that plaintiff received any injury to his back on June 7, 1968, and in rejecting this defendant’s third-party demands against Phoenix; (2) in finding that plaintiff had not fully recovered prior to September 17, 1970, from the injury sustained on March 20, 1968, and in awarding judgment for compensation in any amount against TriState; and (3) in finding that the services of Dr. Campbell were reasonable and required, and in fixing “an equitable amount for these charges” in the face of plaintiff’s failure to establish by competent evidence a reasonable necessity for such services and without competent proof of the charges for the same in any amount.
Tri-State further suggests that the appeal presents these issues: (1) whether Tri-State is entitled to contribution from Phoenix for temporary disability benefits paid to plaintiff after the second accident but terminated after disability allegedly ceased, and for such sums as Tri-State might thereafter be ordered to pay; (2) whether plaintiff’s disability at the time of trial was contributed to by either the first or the second alleged accident, or by a combination of the two, and whether he had recovered from the effects of those accidents prior to the third accident, and, accordingly, whether plaintiff’s disability at the time of trial resulted solely from the third accident; (3) whether the alleged services of Dr. Campbell were reasonable and necessary medical expenses, and whether there is any basis in the evidence on which the amount of such services can be fixed; and (4), if such medical expenses should be charged and assessed, whether they should be paid by Tri-State or by Phoenix, and, if by both, in what proportions.
Plaintiff specifies as error the action of the trial court (1) in finding that plaintiff should receive only one-half of Tri-State’s rate of $35.00 per week, or $17.50, and (2) in awarding plaintiff less than the compensation rate of $49.00 per week, which was in effect at the time of plaintiff’s injury on September 17, 1970.
Of primary importance is the relationship of the injuries and disabilities sustained in the first two of a series of three accidents and their relationship to the injuries and disabilities sustained in the third accident.
The first of these accidents occurred at the Villa Del Lago Apartments where plaintiff, with two other workmen, was engaged in installing reinforcing beams of an approximate size of 12" x 12" and of a length of 45 feet, each weighing from 200 to 250 pounds. While carrying a beam and lifting it into place, the two men near the ends of the beam were said to have gotten into a “bind,” whereupon they dropped their load, casting all the weight upon plaintiff near the middle of the beam. Plaintiff immediately experienced pain in his back and right leg.
Dr. James H. Eddy, Jr., a surgeon, and Dr. Carson R. Reed, Jr., an orthopedist, diagnosed plaintiff’s condition as an acute lumbosacral sprain or strain and treated him for that condition. Dr. Eddy caused him to be hospitalized and placed in traction. A myelogram test was negative for disc injury. Physiotherapy was prescribed and administered. Dr. Eddy examined plaintiff for the last time on May 27, 1968, and reported no objective findings of disability.
On the occasion of the second accident on June 7, 1968, plaintiff fell from a 20-foot ladder. He “rode” the ladder down. In this accident plaintiff sustained cuts, bruises, and lacerations. Following this accident, Dr. Campbell referred plaintiff to Dr. E. C. Simonton, an orthopedist, who examined plaintiff on July 26, 1968, and reported plaintiff, on that date, had a low *438 back pain. Dr. Simonton found slight tenderness in the lower lumbar midline, but there was full range of motion in the lumbar spine; lumbosacral tests produced pain. X-rays revealed no fractures, dislocations, or anomalies. There is no proof of any injury to the back caused in that accident. Nor does plaintiff claim to have sustained such injuries in that accident. The trial court disposed of the question in a written opinion wherein he stated:
“This brings us to the question as to whether or not plaintiff received any injury to his back in the accident on June 7, 1968, at which time Phoenix was the Insurer of Riggers & Erectors, Inc. There was no evidence presented showing that plaintiff received any injury to his back on June 7, 1968. The only injury that he received at that time according to his own testimony and that of his fellow employee was superficial cuts and abrasions to his right arm and hand, and the doctor who treated him at the Boyd Clinic testified that plaintiff made no complaint of any injury to his back when he treated him on June 7, 1968.
“We, therefore, hold that plaintiff received no injury to his back on June 7, 1968.”
We find no manifest error in the court’s findings as to the noneffects of the second accident. Any contrary conclusion would, of necessity, in this case, be based upon conj ecture.
Dr. Campbell first had the occasion to examine and treat plaintiff on May 28, 1968. He continued with his treatments until the third accident. His diagnosis during the early period of his treatment was that plaintiff had sustained a lumbo-sacral sprain or strain. X-rays disclosed a narrowing between the third and fourth lumbar vertebrae. Soreness persisted in plaintiff’s back and his muscles were tense. Physiotherapy to alleviate pain and discomfort was administered. Dr. Campbell, however, referred plaintiff to Dr. Simon-ton who, as heretofore noted, examined plaintiff on July 26, 1968.
Dr. Simonton’s examination confirmed Dr. Campbell’s prior diagnosis of May 28, 1968, and he reported there was a slight tenderness in the lower lumbar midline, full range of motion in the lumbar spine, and pain caused in a lumbosacral test. Sensation to pinprick was diminished over the lateral surface of the left leg and medial and lateral surfaces of the left foot. X-rays revealed no evidence of fractures, dislocation, or anomalies. The doctor’s diagnosis of plaintiff’s condition was, as already noted, “a herniated nucleus pulposus versus acute lumbosacral strain.” Continued therapy, reinitiation of lumbar flexion exercises, and the use of a brace were suggested in the treatment of plaintiff’s injuries.
From the occurrence of the first accident until that of the third on September 17, 1970, plaintiff had not returned to full performance of his duties. He was assigned to such of his duties as were considered light in view of his occupation as an iron worker. During this interval, plaintiff continued to complain of pain and discomfort. The requirements of his family and of his economic condition, so he claimed, compelled him to work notwithstanding the pain and discomfort.
The third accident in which plaintiff was involved occurred at Sibley, Louisiana, while plaintiff, with other workmen, was engaged in unloading a truck. Plaintiff related that he picked up a “bundle” of bars of iron to pass to another worker and, as he turned to do so, he apparently twisted his back and dropped his load. Immediate pain was experienced in his back and down his right leg. Dr. Reed being unavailable, plaintiff reported to Dr. Ray E. King, an orthopedist, the following day.
After receiving a history of the occurrence and of plaintiff’s prior injuries, Dr. King proceeded with an examination. This examination revealed involuntary muscle spasm in the right lower back *439 where motions were restricted 50%. Straight leg raising to a maximum degree produced pain in the right hip. Pelvic flexion was mildly restricted. An x-ray examination disclosed narrowing of the in-terspace at the L4-L5 level. The doctor concluded there was, at that level, a degenerated disc partially herniated on the right side. An operation was advised which was performed on October 28, 1970. The affected disc was found to be soft and bulging, considered by the doctor as herniated. The disc was removed and a fusion of two segments of the vertebrae was carried out from the L4 to the sacrum.
Dr. King was of the opinion at the time of trial plaintiff was disabled for the performance of any of the duties of his former employment. From his findings in the course of the operation, and from the history of plaintiff’s prior conditions, such as the herniated nucleus pulposus found by Drs. Reed and Simonton, Dr. King expressed an opinion that the prior trauma weakened or worsened plaintiff’s condition and that the third accident brought it to a head.
Considering the testimony of plaintiff’s inability to do the usual and customary work of an iron worker after the injury sustained by him on March 20, 1968, and that the work done was in pain and from economic necessity, and Dr. King’s opinion that plaintiff suffered an injury to the disc in the accident of March 20, 1968, which he repaired on October 28, 1970, the conclusion, we think, is logical and reasonable that plaintiff’s total disability as of September 17, 1970, was contributed to by the injuries sustained by him in his first accident.
From our review of the record, the conclusion, to us, is inescapable that the injuries sustained in the first accident, resulting in plaintiff’s disability, were aggravated and extended in duration by the accidental injuries sustained in the third acri-dent. There is no question of plaintiff’s total disability at the time of trial. No contention is made to the contrary. A preponderance of the evidence establishes that during the interval between the first and third accidents plaintiff was likewise totally and permanently disabled within the intent and purview of the workmen’s compensation statute, and that such disability results and continues from the combined injuries sustained in the three accidents.
The law is well settled that in instances of two or more accidents, all of which are contributing causes of the ultimate disability, the employers and their insurers at the time of such accidents may be held solidarily liable for the payment of compensation. Finley v. Hardware Mutual Insurance Company, 237 La. 214, 110 So.2d 583 (1959); Lum v. Tri-State Insurance Company, 252 So.2d 157 (La.App., 2d Cir. 1971—writ refused); Fontenot v. Great American Indemnity Company, 127 So.2d 822 (La.App., 3d Cir. 1961); Brock v. Jones & Laughlin Supply Co., 39 So.2d 904 (La.App., 1st Cir. 1949).
Therefore, Tri-State is or was indebted unto plaintiff for the weekly compensation payable during plaintiff’s disability, not, however, exceeding 400 weeks dated from March 20, 1968, and limited to the sum of $35.00 per week as prescribed for such period by the compensation law in effect on the date of the first accident, subject to Tri-State’s right of contribution from Southland Fabricators and its insurer, Westchester, subject, of course, to TriState’s credit against plaintiff for the payments theretofore made.
The right of contribution and the procedure for the enforcement thereof are set forth in LSA-C.C. Art. 2103 and LSA-C. C.P. Art. 1111, respectively, the recitals of which are as follows:
“When two or more debtors are liable in solido, whether the obligation arises *440 from a contract, a quasi contract, an offense, or a quasi offense, it should be divided between them. As between the solidary debtors, each is liable only for his virile portion of the obligation.
“A defendant who is sued on an obligation which, if it exists, is solidary may seek to enforce contribution, if he is cast, against his solidary co-debtor by making him a third party defendant in the suit, as provided in Article 1111 through 1116 of the Code of Civil Procedure, whether or not the third party defendant was sued by the plaintiff initially, and whether the defendant seeking to enforce contribution if he is cast admits or denies liability on the obligation sued on by the plaintiff.”
LSA-C.C. Art. 2103.
"The defendant in'a principal action by petition may bring in any person, including a codefendant, who is his war-rantor, or who is or may be liable to him for all or part of the principal demand.
“In such cases the plaintiff in the principal action may assert any demand against the third party defendant arising out of or connected with the principal demand. The third party defendant thereupon shall plead his objections and defenses in the manner prescribed in Articles 921 through 969, 1003 through 1006, and 1035. He may reconvene against the plaintiff in the principal action or the third party plaintiff, on any demand arising out of or connected with the principal demand, in the manner prescribed in Articles 1061 through 1066.”
LSA-C.C.P. Art. 1111.
Plaintiff, not having claimed, in this action, compensation from Southland Fabricators or its insurer, is not entitled to recovery in this action against them, but they, as defendants in third-party proceedings, are indebted unto third-party plaintiff in contribution for their share of compensation paid by third-party plaintiff TriState.
We find no merit in defendants’ contention that the services rendered by Dr. Campbell were of no benefit to plaintiff. It is not unusual that medical treatments, in some instances, are unsuccessful; however, there is no showing in this record that the treatments administered were unnecessary. Plaintiff’s testimony is quite to the contrary, as he asserts the treatments relieved or diminished his pain and discomfort.
To the date of the filing of the last supplemental petition, plaintiff was allegedly indebted unto Dr. Campbell for $1,676.00. By the time of trial, the account had increased by an additional sum of $134.00. Dr. Campbell testified in detail with respect to the services rendered by him, and that the statements filed in evidence represented the amount due him. These statements, identified by Dr. Campbell and testified as true and correct, were properly received in evidence. The statements itemized the charges day by day and recited the charges made upon the occasion of each treatment. The trial court, however, in rendering judgment, found that $1,000.00 would adequately compensate Dr. Campbell for his services. Plaintiff, in this court, made no complaint with respect to this award.
Workmen’s compensation was also paid by Tri-State for the period of 131 weeks intervening between the first and third accidents at the rate of $35.00 per week for a total sum of $4,585.00. For this, Tri-State should have credit.
Plaintiff finally contends that his compensation should be computed in accordance with a formula set forth in Stansbury v. National Auto. & Cas. Ins. Co., 52 So.2d 300 (La.App., 1st Cir. 1951), so as to entitle him to a rate of $49.00 per week. *441 There is no merit in this contention for the reasons that: (1) the maximum rate of compensation applicable at the time plaintiff sustained injuries in the first accident was $35.00 per week (LSA-R.S. 23:1202, as amended by Act 411 of 1956); (2) the maximum rate of $49.00 per week claimed by plaintiff is inapplicable here because such rate applies only to injuries or deaths occurring subsequent to December 31, 1969 (LSA-R.S. 23:1202, as amended by Act 25 of Extra Session, 1968); (3) moreover, the formula is inapplicable to the situation presented here because neither plaintiff’s employer nor its insurer, at the time he sustained the third accident, was made a defendant; that employer and its insurer were made third-party defendants at the instance of defendant Tri-State only for the purpose of enforcing contribution of their pro rata share in the compensation paid by defendant Tri-State; (4) further, the formula enunciated in Stansbury is supported by neither logic nor legal authority ; and, moreover, violates the principle set forth in LSA-C.C. Art. 2103 which provides that, where two or more debtors are liable in solido, irrespective of the manner in which the obligation arose, each shall be liable as between, or among, themselves only for his virile portion of the obligation. No formula could serve as a guide in proportioning payments of compensation among debtors in solido where the result would be to increase one’s pro rata above and beyond his virile portion.
Tri-State should recover in contribution against Southland and its insurer South-land’s pro rata portion, that is, one-half of the compensation paid or payable by TriState for the period beginning with the third accident, subject, of course, to the payments made by Westchester insofar as such payments do not infringe upon TriState’s entitlement to recover one-half of the compensation paid or payable by TriState during that period.
Now, therefore, for the aforesaid assigned reasons, the judgment appealed is amended and recast to read as follows:
It is now Ordered, Adjudged, and Decreed there be judgment herein in favor of plaintiff, Dowell Ray Carter, against the defendant Tri-State Insurance Company for the full sum and weekly compensation of $35.00 per week during plaintiff’s disability, not, however, to exceed 400 weeks, with legal interest on each of said installments from its maturity until paid, subject to credits of payments made by Tri-State Insurance Company covering a period of 131 weeks dated from March 20, 1968, aggregating the sum of $4,585.00.
That plaintiff have and recover judgment against Tri-State Insurance Company for medical expenses in the sum of $1,000.00, with legal interest thereon from judicial demand until paid;
There be judgment herein in favor of Tri-State Insurance Company, a third-party plaintiff, against Southland Fabricators and Erectors and Westchester Fire Insurance Company, third-party defendants, in solido, for their pro rata one-half of all compensation paid plaintiff by third-party plaintiff Tri-State Insurance Company or which it may pay covering the period of plaintiff’s disability during the period beginning September 17, 1970, and continuing for a period not to exceed 400 weeks dated from March 20, 1968;
That defendant Tri-State Insurance Company and Westchester Fire Insurance Company and Southland Fabricators and Erectors, third-party defendants, be, and they are hereby, taxed with all costs in the proportion of one-half to Tri-State Insurance Company and one-half to Southland Fabricators and Erectors and Westchester Fire Insurance Company.
Amended and, as recast, affirmed.