504 So.2d 1126 (1987)
Collins James DAIGLE
v.
LAJET, INC., Travelers Insurance Company and Home Insurance Company.
No. 86-CA-645.
Court of Appeal of Louisiana, Fifth Circuit.
March 16, 1987.
Maurice P. Mathieu, Rhodes, Mathieu & Degate, Houma, for plaintiff-appellee Collins James Daigle.
*1127 Philip J. McMahon, Jason Lyons, McMahon & McCollam, Houma, for defendants-appellants LaJet, Inc. and The Travelers Ins. Co.
John E. Cox, John R. Keogh, Edward F. Stauss, III, Keogh, Cox & Wilson, Ltd., Baton Rouge, for defendants-appellees La-Jet, Inc. and Home Ins. Co.
Before CHEHARDY, KLIEBERT and DUFRESNE, JJ.
KLIEBERT, Judge.
Collins Daigle, plaintiff, was injured twice while working for the same employer, LaJet, Inc. At the time of the first injury, Travelers Insurance Company (Travelers), defendant-appellant, was the employer's insurer, and Home Insurance Company (Home), defendant, was the employer's insurer at the time of the second injury. The trial judge held Travelers wholly responsible for the payment of compensation benefits due to Daigle. Travelers brought this appeal. We find the insurers liable in solido. Accordingly, we amend the judgment to make the defendant insurers liable in solido and as amended, affirm.
Daigle was employed as an electrician's helper at LaJet, Inc. He had a history of intermittent low back and transient right leg pain.[1] On March 27, 1980, he injured his back while moving a ladder at the LaJet facility and subsequently underwent a lumbar hemilaminectory with excision of the left L-4 disc and the right L-5 disc, and removal of a posterior spur at the L-5 level. Dr. Hanchey, who performed the operation, assigned a 10% disability to the back (5% of the body) and released Daigle to return to full duty on October 13, 1980. LaJet's then compensation insurer, Travelers, paid all compensation benefits and medical expenses which accrued during the period of disability.
Although Daigle returned to work he continued to experience low back pain and pain in his right leg and as a result was examined by Dr. Edward Connolly, a neurosurgeon, who diagnosed slight residual right S-1 radiculopathy but found no evidence of recurrent disc herniation. The doctor instructed Daigle to wear his lumbosacral corset and avoid heavy lifting. On February 11, 1981 Dr. Connolly diagnosed acute lumbar strain and recommended one week's bed rest. Thereafter Daigle returned to light duty work on March 2, 1981. Travelers again paid compensation benefits and medical expenses during the period of disability.
Some nine months later, on January 4, 1982, Daigle injured his back while installing a Jacuzzi in an office at the LaJet facility. Again he visited Dr. Connolly who found no evidence of recurrent radicular problems or recurrent disc herniation and diagnosed a lumbar strain. Daigle was instructed to rest for two weeks. At the time of the second injury, LaJet had secured a new compensation insurer, Home. Home paid compensation benefits from January 12 through February 18, 1982. Daigle was laid off on February 11, 1982. Home discontinued paying compensation benefits when medical reports by Doctor Jackson indicated the 1982 injury was related to the 1980 injury.
Daigle continued to suffer low back and bilateral leg pain primarily on the right side and as a result was referred to Dr. Kenneth Vogel, a neurosurgeon. The neurological examination was positive as to the lumbosacral region, and a CAT scan revealed evidence of a mild to moderate bulge at the L-4 disc and a minimal bulge in the L-3 disc. After further diagnostic testing, Dr. Vogel performed a microsurgical laminectomy with excision of a herniated L4-5 disc left, removal of L5-S1 disc right, with lateral recess decompression, and lumbar medial branch neurotomy, L4-5 bilateral. Dr. Vogel assigned a 15% increase in disability to the back, for a total of 25%, and recommended that Daigle refrain from moving objects weighing more than thirty-five pounds and avoid excessive stooping.
*1128 Subsequently, in September 1985, Dr. Jon Savoie referred Daigle to Dr. John Jackson, a neurosurgeon, because of continued complaints of back pain and pain in both legs. Dr. Jackson, who was treating Daigle as of the date of trial, diagnosed failed back syndrome which would in the future require removal of the L4-5 and L5-S1 discs as well as scar tissue from the earlier operations and a posterior lumbar interbody fusion. Based on Daigle's history, Dr. Jackson concluded the January 1982 incident aggravated Daigle's earlier back problems.
The sole issue at trial concerned which of the compensation insurers was responsible for outstanding compensation and medical benefits and travel expenses. Travelers argued two separate and distinct injuries occurred and therefore payment was due by Home and the Second Injury Fund. Home argued the "second injury" was in fact a re-aggravation of the earlier injury. The trial court concluded that the January 4, 1982 incident amounted to the aggravation of a continuing injury dating at least to the March 27, 1980 incident with apparent failure of medical attempts to alleviate Daigle's condition. The court thereafter rendered judgment against Travelers, as LaJet's compensation carrier at the time of the earlier accident, but in so doing erred as a matter of law.
If either incident was the sole cause of Daigle's disability, only one of the defendant compensation insurers would be liable for benefits and expenses. Scott v. Hartford Accident and Indemnity Company, 302 So.2d 641 (La.App. 3rd Cir.1974). However, if Daigle's present disability is due to a combination of both incidents or by virtue of the second incident aggravating the prior injury, both the subsequent compensation insurer and the insurer at the time of the first incident are solidarily liable for compensation benefits and medical expenses. Scott, supra; Wheat v. Ford, Bacon and Davis Const. Corp., 424 So.2d 293 (La.App. 1st Cir.1983), writ denied 429 So.2d 155 and 158; Lachney v. Employers Com. Union Ins. Co., 337 So.2d 624 (La.App. 4th Cir.1976); Carter v. Tri-State Insurance Co., 259 So.2d 433 (La.App. 2nd Cir.1972).[2]
Upon review of the medical depositions and Daigle's testimony we have determined the trial judge's factual conclusion that the second incident aggravated an existing injury and contributed to Daigle's present disability is supported by a preponderance of the evidence,[3] particularly in light of the fact Daigle was assigned a 10% permanent disability after the first disc surgery and a 25% permanent disability after the second surgery on the same discs. Daigle will continue to be totally disabled until surgery is performed on the same discs. The evidence shows Daigle never fully recovered from the March 1980 injury although he was able to return to work for extended periods of time prior to the January 1982 incident.[4]
Having reached this factual conclusion, we amend the judgment of the trial court to make Travelers Insurance Company and Home Insurance Company solidarily liable for the compensation benefits awarded to Daigle by the trial court and as thus amended, affirm the judgment.
All costs of this appeal shall be paid by the appellee, Home Insurance Company.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] On December 4, 1979, Dr. Robert Hanchey, a neurosurgeon, diagnosed mild protruded disc syndrome and prescribed a lumbosacral corset. Daigle was instructed to return if his discomfort increased.
[2] In Wheat, supra; Lachney, supra, and Scott, supra, two distinct work-related accidents caused back pain and led to the disabling back condition. In Carter, supra, plaintiff's back problem was brought about by three incidents.
[3] The manifest error rule is not applicable where, as in the instant case, the factual conclusions of the trial court are based on depositions. Wattigny v. Breaux, 488 So.2d 419 (La.App. 3rd Cir.1986); Vial v. Armstrong, 479 So.2d 583 (La. App. 1st Cir.1985), writ denied 481 So.2d 634 (La.1986).
[4] Daigle testified he continued to have back pain after returning to work subsequent to the first surgery but was "able to get along."